IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

FEBRUARY 14, 2006

NO. 07-05-0384-CV

IN RE STACY K. BOONE, P.A. AND

CARDIOLOGISTS OF LUBBOCK, P.A.

_______________________________

NO. 07-05-0425-CV

IN RE COVENANT MEDICAL GROUP, P.A.

_____________________________________

Before REAVIS and CAMPBELL, JJ. and BOYD, S.J.
(footnote: 1)
OPINION

Relators Stacy K. Boone, P.A. (“Boone”) and Cardiologists of Lubbock, P.A. (“COL”), defendants in a medical malpractice case, seek a writ of mandamus directing respondent the Honorable Sam Medina, judge of the 237
th
 District Court of Lubbock County, to withdraw his order denying relators’ motion to dismiss and further directing respondent to grant relators’ motion to dismiss, thereby dismissing the underlying case with prejudice with an award of monetary sanctions.
(footnote: 2)  In a separate original proceeding, relator Covenant Medical Group, P.A. (“CMG”)
(footnote: 3) seeks a writ of mandamus directing respondent to grant CMG’s motions to dismiss, thereby dismissing the underlying cause with prejudice with an award of monetary sanctions.
(footnote: 4)  Both of these original proceedings arise from the same underlying case and the same expert report filed pursuant to former article 4590i, the Medical Liability and Insurance Improvement Act.  We deny both petitions.

Factual Background

On June 18, 2003, Nancy Stovall underwent surgery for a right inguinal hernia performed by Elbert A. Thames, Jr., M.D., an employee of CMG, at Covenant Medical Center in Lubbock, Texas.  Stovall’s health history included an aortic valve replacement with a mechanical prosthesis in 1990, a coronary stent placement in 1999, and a laparascopic cholecystectomy in 2002.  Following the uneventful hernia repair surgery, Stovall experienced chest pain and a cardiologist, Howard P. Hurd II, M.D., was consulted.  Boone is Hurd’s physician assistant and also saw Stovall during her hospitalization.  COL employs both Boone and Hurd.  Stovall remained in the hospital in order to regulate her anti-coagulation medication which included Heparin and Coumadin.  On June 21, Stovall fell on her way to the bathroom.  There was a drop in her blood count and blood pressure and she was moved to the ICU under the care of Mark E. Pessa, M.D., an employee of CMG.  The next day, Stovall suffered from liver dysfunction and renal failure secondary to hypotension.  She later experienced multi-system failure and died on June 24, 2003.

Background of Underlying Lawsuit

On August 26, 2003, pursuant to article 4590i,  the real parties in interest filed suit against the healthcare providers that participated in her course of treatment that began on June 18, 2003.  In January 2004, plaintiffs provided their section 13.01(d) medical expert report, authored by Howard S. Bush, M.D., a cardiologist.  Among other aspects of her treatment, the 13-page Bush report criticizes Stovall’s post-operative anti-coagulation therapy, which was administered by Dr. Hurd, Boone, COL, CMG, and others.
(footnote: 5)  

Boone and COL’s Motions to Dismiss

In February 2004, Boone and COL filed their objections to the sufficiency of the Bush report and a motion to dismiss.  In July 2004, Boone and COL renewed their objections to the Bush report and filed additional motions to dismiss.  The trial court denied Boone and COL’s motions to dismiss in August 2005, and Boone and COL seek mandamus to reverse the trial court’s denial of the motions.

CMG’s Motion to Dismiss

As noted, Drs. Thames and Pessa are employees of CMG.  Thames, Pessa and CMG filed separate motions to dismiss based on the inadequacy of Dr. Bush’s report under article 4590i.  In July 2005, the plaintiffs non-suited Dr. Pessa.  In August 2005, the trial court denied the motions to dismiss filed by Thames and CMG.  CMG suggests, and the real parties in interest do not dispute, that Thames also has been dismissed from the underlying lawsuit.
(footnote: 6)   CMG also seeks mandamus for the trial court’s denial of its motion to dismiss.

Requirements of 4590i Expert Report  

This court has found mandamus relief available to correct a trial court’s erroneous failure to dismiss a claim brought under article 4590i that is not supported by an adequate section 13.01 expert report.  
In re Windisch
, 138 S.W.3d 507, 514 (Tex.App.–Amarillo 2004, orig. proceeding) (qualifications of expert not shown in report);
 In re Northwest Texas Healthcare System, Inc.
, 2005 WL 991365, *3 (Tex.App.–Amarillo April 27, 2005, orig. proceeding [mand. pending]) (reports inadequate because they either omit or do no more than state the experts’ mere conclusions about the elements required in an expert report).  Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law.  
Walker v. Packer
, 827 S.W.2d 833, 839 (Tex. 1992). 

An expert report under section 13.01 does not need to marshal all of plaintiff’s proof, but the report must be written by an expert and provide a fair summary of that expert’s opinions regarding (1) the applicable standard of care, (2) the breach of that standard, and (3) the causal relationship between the breach and the injury.  
T
EX
. R
EV
. C
IV
. S
TAT
. art. 4590i, 
§13.01(r)(6);  
Bowie Memorial Hosp. v. Wright
, 79 S.W.3d 48, 52 (Tex. 2002)
; 
Chisholm v. Maron
, 63 S.W.3d 903, 906 (Tex.App.–Amarillo 2001, no pet.).  To constitute the required “good faith effort,” the report must provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit.  
American Transitional Care Ctrs. of Texas, Inc. v. Palacios
, 46 S.W.3d 873, 879 (Tex. 2001).  With regard to the causation element, the expert must explain the basis of his statements to link his conclusions to the facts.  
Earle v. Ratliff
, 998 S.W.2d 882, 890 (Tex. 1999).  The report must, as to each defendant, provide a fair summary of the expert’s opinions concerning the applicable standard of care, the manner in which the care failed to meet that standard, and the causal relationship between that failure and the claimed injury.  
Palacios
, 46 S.W.3d at 878.

Petition of Boone and COL

In support of their contention that mandamus should issue to correct the trial court’s order denying their article 4590i, §13.01(e) motion, Boone and COL argue that Bush’s report (1) fails to state the standards of care applicable to a professional association and a physician’s assistant and fails to demonstrate that Bush is qualified to address the standards of care applicable to those defendants; (2) fails to show a breach in the standard of care by Boone and COL; and (3) fails to show a causal link between the care rendered by Boone and COL and Stovall’s injuries and death.   

Qualifications of Dr. Bush

We first address Dr. Bush’s qualifications to testify as to the standard of care applicable to Boone and COL.  The determination of his qualifications to provide an expert report must be made on the basis of the contents of the report and his curriculum vitae. 
Bowie
, 79 S.W.3d at 52;  
Windisch
, 138 S.W.3d at 511.  Those documents reflect that Bush has been licensed to practice medicine in Texas since 1983 and in Florida since 1990.  He is board certified in Cardiovascular Diseases, in Interventional Cardiology, and in Internal Medicine.  At the time of the report, Bush was engaged in active practice as the chairman of the Department of Cardiology at Cleveland Clinic Florida.  His report states that he “devotes the majority of [his] time to operative and post operative care, and [he] regularly see patients under the circumstances described in this report.”  It further states he averages seeing over 75 patients per week in clinic, and performs over 800 procedures (450 interventions and 350 diagnostic procedures) per year, and that he is “familiar with the standards of care and regularly provide and supervise care in connection with the treatment of patients situated like Nancy Everett Stovall in terms of physicians, physician’s assistants, nurses, and hospitals.”  As noted, Boone is a physician’s assistant supervised
(footnote: 7) by Dr. Hurd who, like Dr. Bush, is a cardiologist.  Relators do not here contend Bush is unqualified to render an expert opinion on the standard of care applicable to Dr. Hurd.  Bush’s expert report and curriculum vitae contain information from which the trial court could have concluded that Dr. Bush is competent to testify to the standard of care of a physician’s assistant in the same practice area.  
See Manor Care Health Services, Inc. v. Ragan
, 2006 WL 57355, *4 (Tex.App.–Houston [14
th
 Dist.] Jan. 12, 2006, no pet.); 
Hall v. Huff
, 957 S.W.2d 90, 100 (Tex.App.–Texarkana 1997, pet. denied) (both stating a physician is not disqualified from offering an opinion regarding nursing care simply because he is a physician and not a nurse by profession). 

   Boone and COL next question whether Bush is qualified to testify as to the standard of care applicable to COL, a professional association.  
In response, real parties in interest argue that no expert report was required as to COL because their initial pleadings asserted COL’s liability only on a 
respondeat superior
 theory.  COL replies that real parties’ amended pleadings allege COL has liability apart from 
respondeat superior 
and the plain language of 4590i requires an expert report for each health care provider against whom a claim is asserted.  
Section 24 of the Professional Association Act provides: “The association . . . shall be jointly and severally liable with the officer or employee furnishing professional services for such professional errors, omissions, negligence, incompetence or malfeasance on the part of such officer or employee when such officer or employee is in the course of his employment for the association.”  T
EX
. R
EV
. C
IV
. S
TAT
. A
NN
. art. 1528f, § 24.  There is no suggestion that Dr. Hurd or Boone was acting outside the course of employment in their treatment of Stovall.  If either of them was negligent, COL has the liability prescribed by the Professional Association Act.  
Battaglia v. Alexander
, 177 S.W.3d 893, 901-02 (Tex. 2005).  We have concluded Dr. Bush is qualified to testify to the standard of care applicable to Boone, and, as noted, relators do not here challenge his qualifications to testify to that applicable to Dr. Hurd.  Therefore, Dr. Bush is qualified to testify as to the standard of care applicable to COL.  
Id.
, T
EX
. R
EV
. C
IV
. S
TAT
. A
NN
. art. 1528f, § 24.    

COL seems to suggest that regardless of whether Dr. Bush was qualified to testify as to COL’s vicarious liability, Dr. Bush is not qualified to testify as to COL’s individual liability and, thus, the Bush report is inadequate.  We do not reach that issue because we have concluded section 24 of the Professional Association Act imputes the alleged liability of Dr. Hurd and Boone to COL and, therefore, dismissal of the case against COL is not warranted based upon the qualifications of Dr. Bush.  

Standard of Care

We turn to the question whether the Bush report adequately states the standard of care applicable to Boone and COL.  We conclude that it does.  

Bush’s report divides his discussion of the standard of care into two sections: the first addressing the cardiologist Dr. Hurd, his physician’s assistant Stacey K. Boone, their practice group COL, the surgeons Dr. Thames and Dr. Pessa, and their practice group CMG (denominated by Dr. Bush as the “physicians”) and the second addressing the hospital and its employees.  The “physicians” section of the report begins: “The standard of care for Howard P. Hurd, II, M.D., Cardiologists of Lubbock, P.A., Stacey K. Boone, P.A., Elbert A. Thames, Jr., M.D., Mark E. Pessa, M.D., and Covenant Medical Group, P.A. (hereinafter “the Physicians”) for pre-operative, operative, and post-operative anti-coagulation and anti-coagulation 
transition
 is well established.” (emphasis in original).  There follows a detailed discussion of the standard of care with respect to post-operative anti-coagulation therapy in patients with a mechanical valve prosthesis, as applicable to Stovall. 

Relators contend the report does not identify a standard of care for a physician’s assistant like Boone.  They are correct that the report does not separately set forth a standard of care applicable to Boone.  But we must agree with the real parties in interest  that the report nonetheless states Dr. Bush’s opinion concerning the standard of care applicable to Boone.  The report ascribes the same standard of care to Boone as to the others included among the “physicians.” 

Relators elsewhere cite 
Taylor v. Christus Spohn Health System Corp.
, 169 S.W.3d 241 (Tex.App.–Corpus Christi 2004, no pet.), which affirmed a trial court’s dismissal of the plaintiff’s claims against six defendants based on the inadequacy of the expert report.  The proffered expert report ascribed negligent conduct to some, and sometimes all six, defendants, without explaining the standard of care required of the individual defendants.  We do not find 
Taylor
 controlling here.  The disparate defendants there included an emergency room physician, a hospital, and a cardiology association which, the court noted, “owed different duties to the deceased.”  
Id
. at 246. 

All the individual defendants here were involved in the administration of Stovall’s post-operative anti-coagulation therapy.  Bush’s report states that the standard of care applicable to all of them required, 
inter alia
,
(footnote: 8) that they “recognize ongoing blood loss and discontinue anti-coagulation in the presence of ongoing blood loss.  Specifically, the patient’s labs revealed ongoing blood loss and a growing wound hematoma was recognized.  The standard of care required that the anti-coagulation be discontinued in light of the patient’s presentation.”  While relators may disagree with Bush’s opinions concerning the standard of care applicable to each of those individual defendants, the report contains a fair summary of his opinions and adequately informs them of the specific conduct called into question. 
 Palacios
, 46 S.W.3d at 879-80.  We conclude the report fairly summarizes the standard of care applicable to Boone and COL.  
Id
.; T
EX
. R
EV
. C
IV
. S
TAT
. A
NN
. art. 4590i, §13.01.  

Breach of the Standard of Care and Causation

Boone and COL argue the Bush report fails to show their breach of the standard of care and fails to show a causal link between the care rendered by them and Stovall’s injuries.  With regard to causation, the expert’s report must contain information linking the harm to the alleged breach in a manner that is not merely conclusory.  
Bowie
, 79 S.W.2d at 53.    The report states, in part:

With regard to the manner in which the are [
sic
] rendered by the Physicians failed to meet the standards, the initial decision to anti-coagulate the patient, the dose of anti-coagulation that was used (Heparin and Coumadin), the decision to keep the patient in the hospital beyond the initial 24 hours of observation, and the failure to recognize and act appropriately on the falling hemoglobin in a post-operative patient with an expanding hematoma on anti-coagulation all represent breaches of the standard of care.  Further, the failure on the part of the Physicians to insist that the anti-coagulation be discontinued after 24 hours with the wound hematoma beginning and the hemoglobin falling represent additional breaches of the standard of care.
(footnote: 9)

Here again, in this case, the report adequately informs Boone and the other defendants of the specific conduct the plaintiffs call into question.  That the report includes Boone and COL with her supervising physician Dr. Hurd and the other physicians does not render its discussion of the alleged breaches inadequate.  
We find also that the Bush report links the harm to the breach
(footnote: 10) in a manner that is not merely conclusory.  
Bowie
, 79 S.W.2d at 53.  We conclude the Bush report constitutes a good faith effort to inform Boone and COL of the specific conduct called into question and  provides a basis for the trial court to conclude that the claims against Boone and COL have merit.  
Palacios
, 46 S.W.3d at 879.

Covenant Medical Group

CMG also raises the broad issue of whether mandamus should issue to correct respondent’s order denying relief to CMG on its article 4590i, § 13.01 motion.  Specifically, CMG argues the Bush report (1) does not adequately establish a basis upon which Dr. Bush is qualified to address the standards of care applicable to CMG’s related surgeons and does not adequately address the standard of care applicable to a professional group, (2) does not adequately identify how its duty was breached, and (3) does not adequately demonstrate how the allegedly negligent medical care of CMG caused injury or damage.

Qualifications

With respect to Bush’s qualifications, CMG argues the report and attached curriculum vitae may establish that Bush is a well-qualified cardiologist but “contains no explanation as to how he is qualified to render opinions regarding the standard of care applicable to a general surgeon.”
(footnote: 11) In a review of the qualifications of one rendering a section 13.01 report, the "issue is the specific subject matter and the expert's familiarity with it."  
Hagedorn v. Tisdale
, 73 S.W.3d 341, 350 (Tex.App.–Amarillo 2002, no pet.) (citing 
Broders v. Heise
, 924 S.W.2d 148, 153 (Tex. 1996)).  Bush’s report does not concern Stovall’s hernia surgery.  The specific subject matter of the report is the management of Stovall’s post-operative anti-coagulation therapy and related care, particularly as it relates to her history of aortic valve replacement.  Bush’s active medical practice encompasses that subject matter.  His report says he is familiar with the standard of care for physicians “in relation to appropriate protocols for anti-coagulation and anti-coagulation 
transition
” 
and the statement is supported by the description of his practice, training and experience.  (emphasis in original). 
 
We conclude he is qualified to testify to the standard of care applicable to the physicians, including the surgeons with respect to their participation in the management of that post-operative therapy and care.  
See Windisch
, 138 S.W.3d at 512 
(some standards of care applicable to multiple schools of practice); 
Blan v. Ali
, 7 S.W.3d 741 (Tex.App.–Houston [14
th
 Dist.] 1999, no pet.) (practical knowledge of what is usually and customarily done by other practitioners under similar circumstances may qualify witness to testify).

As with COL, our conclusion Bush is qualified to testify to the standard of care applicable to Dr. Thames and Dr. Pessa in this context, mandates the conclusion the trial court’s denial of the motion to dismiss was not an abuse of discretion.  T
EX
. R
EV
. C
IV
. S
TAT
. A
NN
. art. 1528f, § 24; 
Battaglia
, 177 S.W.3d at 901-02.

Standard of Care - Breach - Causation

CMG contends Bush’s report  “says nothing about the standard of care applicable to CMG.  It simply lumps CMG in with other Defendant physicians, physician assistants and professional entities.... [and] the Bush Report makes no effort to identify any particular duty of care owed by CMG to this particular patient, how its duty, if any, was breached, and how the alleged breach caused the decedent’s injury.”  CMG also relies on 
Taylor
, 169 S.W.3d 241 and cases cited therein.  We disagree with CMG’s contention.  Just as with Boone and COL, we find the report adequately addresses the standards applicable to the CMG physicians who treated Stovall post-operatively, the manner in which Bush believes the care fell below the standards and the resulting harm, and find that, in these circumstances, the inclusion of the surgeons and the cardiology defendants in the same discussion of those subjects did not render the report inadequate.
(footnote: 12)  
The trial court could have found the report constitutes a good faith effort to inform CMG of the specific conduct called into question and provides a basis for the trial court to conclude that the claims against CMG have merit.  
Palacios
, 46 S.W.3d at 879.      

Conclusion

Because we conclude the trial court did not abuse its discretion in denying the motions to dismiss of Boone, COL, and CMG,  
Walker
, 827 S.W.2d at 839, we deny both petitions for writ of mandamus.

James T. Campbell

         Justice

   

FOOTNOTES
1:
John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.  

2: This original proceeding has been assigned cause number 07-05-0384-CV.

3: The mandamus record indicates that CMG has been treated in the trial court as a professional association. The record also shows that CMG recently filed amended pleadings indicating that it actually is not a professional association but a non-profit healthcare corporation.  We have not considered, and this opinion does not address, the effect of such a change in CMG’s organizational form.

4: This separate proceeding has been assigned cause number 07-05-0425-CV.  This opinion considers and decides both cause number 07-05-0384-CV and cause number 07-05-0425-CV. 

5: Plaintiffs, in their original petition, also sued Covenant Health System, Covenant Health System d/b/a Covenant Medical Center, Sisters of St. Joseph of Orange, St. Joseph Health System, Elbert A. Thames, Jr., M.D., Mark E. Pessa, M.D., and SWAT Surgical Associates, L.L.P.  The petitions before us challenge the adequacy of the expert report only as to Boone, COL, and CMG.

6: The record before us does not include the order dismissing Dr. Thames from the lawsuit, but we note that the Fifth Amended Original Petition does not include Dr. Thames as a party defendant.

7: T
EX
. O
CC
. C
ODE
 A
NN
. §§  204.202, 204.204.

8: The report also discusses other requirements of the standard of care applicable to the physicians, including a standard requiring the timely recognition of kidney failure and a standard requiring performance of a serum creatinine (a measure of kidney function) before administering I.V. contrast for an abdominal CT scan.  

9: The report alleges other breaches, including inappropriate dosages of medication and failure to recognize kidney failure.

10: The report states, in part: “With regard to the causal relationship between the Physicians’ failure to meet the standard of care and the injury, harm, and damages suffered . . . it is uncontroverted that this patient’s death was due to internal bleeding and related complications (hemorrhagic shock and multi-system organ failure).  The internal bleeding and related complications directly resulted from the inappropriate use of anti-coagulants in the immediate post-operative period and the inadequate monitoring and adjustment of the continued anti-coagulation.  The failure on the part of the Physicians to recognize a significant drop in the hemoglobin during the post-operative period while the patient was receiving anti-coagulation medications allowed the patient to continue to bleed which caused the hemorrhagic shock, multi-organ system failure and death.”  

11: We know Dr. Thames was the surgeon who performed the surgery for Ms. Stovall’s right inguinal hernia, however, we cannot determine Dr. Pessa’s practice area from the record before us.

12: The report further addressed a specific allegation against Dr. Thames, stating, “Moreover, Dr. Thames ordered an I.V. rate of 50 cc/hour which represented a further breach in the standard of care, because the I.V. rate was insufficient.”