**Damien MALLAT, M.D., Appellant**

v.

**Reginald REEVES, Appellee.**

**No. 05–07–00376–CV.**

Court of Appeals of Texas, Dallas.

Oct. 26, 2007.

---

Tex.R.App. P. 33.1(a)(1)(A).

Elizabeth M. Fraley, Jennifer L.G. Barnes, Fraley & Fraley, L.L.P., Dallas, for Appellant.

Charles M. Noteboom, J. Mark Sudderth, Noteboom The Law Firm, Hurst, and Jeffrey W. Ryan, Chamblee & Ryan, P.C., Dallas, for Appellee.

Before Justices RICHTER, FRANCIS, and LANG–MIERS.

## OPINION

Opinion by Justice FRANCIS.

This health care liability case arises from an endoscopic ultrasound medical procedure appellant Damien Mallat, M.D., performed on appellee Reginald Reeves at Baylor University Medical Center. During the procedure, appellee aspirated the contents of his stomach into his lungs causing him severe medical complications. Appellee sued appellant, anesthesiologist Douglas William Johnson, M.D., and Baylor. After appellee filed a timely medical expert report, appellant moved to dismiss the suit on the ground the expert report was insufficient. The trial court denied appellant's motion to dismiss.

Appellant filed this interlocutory appeal to challenge the trial court's order denying his motion to dismiss and, in a single issue, contends the trial court should have granted his motion and awarded him statutory sanctions. We will reverse and remand this case for further proceedings.

■ We review the trial court's determination on a motion to dismiss a health care liability claim for abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 875 (Tex.2001). The trial court abused its discretion if it denied appellant's motion in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Bowie Mem. Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002) (per curiam). We may not substitute our judgment for the trial court's judgment. *Id.* We cannot find the trial court abused its discretion merely because we would have decided the matter differently. *See Cayton v. Moore,* 224 S.W.3d 440, 444 (Tex.App.-Dallas 2007, no pet.). If, however, the trial court clearly failed to correctly analyze and determine the law, or applied the law incorrectly to the facts, then it abused its discretion. *See id.* at 445.

Within 120 days of filing suit, a plaintiff suing for medical malpractice must file an expert report for each defendant physician or health care worker. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2007). The expert report must fairly summarize the expert's opinion regarding (1) the applicable standard of care, (2) the manner in which the defendant breached the standard of care, and (3) the causal relationship between the substandard care and the plaintiff's injury, harm, or damages. *See id.* at § 74.351(r)(6); *Cayton,* 224 S.W.3d at 445.

■ The report must constitute a good faith effort to summarize the expert's opinion. *Palacios,* 46 S.W.3d at 878. The report need not marshal all the facts but it must include the expert's opinion on each statutory element. *Id.* In addressing each element of the statute, the report qualifies as a good faith effort if, in describing the expert's opinion on the statutory elements, it provides enough information to (1) inform the defendant of the specific conduct at issue, and (2) provide a basis for the trial court to conclude the plaintiff's claims are meritorious. *See id.* at 879. Reports that merely state the expert's conclusions or omit discussion of any statutory requirement are insufficient. *Id.* In determining whether the report constitutes a good faith effort, the trial court is limited to the information contained within the four corners of the report and may not draw inferences to supply absent necessary information. *Id.* at 878; *Cayton,* 224 S.W.3d at 445; *Bowie,* 79 S.W.3d at 53.

To comply with section 74.351, appellee filed the expert report of Angelito Andres Ham, M.D., a board-certified anesthesiolo-

gist. After stating his qualifications as an anesthesiologist, the patient records he reviewed, and the fact that his opinion is limited to anesthetic management, Ham's report delivered the following opinion:

[Appellee] was admitted to Baylor University Medical Center in Dallas Texas on 5/22/04 for a five day history of diffuse abdominal pain associated with nausea and vomiting. At that time, he was 41 years old and had a long history of alcoholic pancreatitis dating back to September of 2003. Abdominal CT scan on admission showed recurrent acute pancreatitis with pancreatic necrosis.

According to the Physicians Orders, on 6/16/04 at 11:25, tube feeds were ordered to be stopped until further notice for an EGD by [appellant]. The Progress Notes stop at 6/1/04 in the documents provided to me. The note by the GI consultant on that date states that [appellee] continued with abdominal pain, nausea and vomiting.

According to the Anesthesia Report, the anesthesiologist, Dr. Johnson made contact with the patient on 6/16/04 at 13:20. His immediate Pre–Anesthesia Evaluation note indicates that [appellee] was scheduled for an EGD. He was on a fentanyl patch for pain. TIVA (total intravenous anesthesia) was discussed. [Appellee] was in the OR at 13:30. There is no documentation to indicate that Dr. Johnson checked or confirmed [appellee's] NPO status. Given that the orders for holding tube feeds were written at 11:25 and the patient's procedure began at 13:30, one could assume that his NPO status was probably less than 2 hrs.

The standard of care for an elective procedure requires a surgeon and an anesthesiologist to have [appellee] be NPO for at least 6 hours. It appears that [appellant] and Dr. Johnson breached this standard as addressed above. In addition this patient had an acute history of nausea and vomiting and was on a fentanyl patch (a continuous release narcotic formulation); it is my opinion that Dr. Johnson exercised poor judgement in not realizing that [appellee] was a very high risk patient for aspiration. Dr. Johnson breached the standard of care by failing to sufficiently account for this risk and by administering an anesthetic that caused [appellee] to lose his protective airway reflexes. In accordance with the standard of care, Dr. Johnson should have either proceeded with general anesthesia and intubated the patient to guard against this risk or he should have carefully titrated his intravenous anesthetic to ensure that the patient did not lose his protective airway reflexes. As a result, the patient vomited and aspirated. Approximately 300cc's of fluid was suctioned and oxygen saturation dropped to 70%. In reasonable medical probability, if [appellant] and Dr. Johnson had complied with the standard of care as discussed above, [appellee] would not have aspirated and the resultant harm may have been avoided. As a result of the aspiration, [appellee] developed adult respiratory distress syndrome, hypotension, sepsis, acute renal failure and associated sequelae.

■ Appellant contends the trial court erred in not dismissing appellee's claim because Ham was not qualified to render an opinion about the performance of a gastroenterologist performing an endoscopic ultrasound, he did not differentiate appellant's breach of the standard of care from Johnson's standard of care and breach, and his opinion as to how appellant caused appellee's injury was merely speculative.

To render an opinion on the standard of care, an expert must meet the qualifications to testify outlined in section 74.401 of the civil practice and remedies code. *See* § 74.351(r)(5)(A). To qualify as an expert witness in a medical malpractice suit against a physician, a witness must (1) be practicing medicine at the time of the testimony or at the time the claim arose; (2) have knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the condition involved in the claim; and (3) be qualified on the basis of training or experience to offer an expert opinion regarding the standard of care. TEX. CIV. PRAC. & REM.CODE ANN. § 74.401(a)(1–3) (Vernon 2005). A physician is "qualified on the basis of training or experience" if the physician is board-certified or has other substantial training or experience in an area of medical practice relevant to the claim and is actively practicing medicine in rendering medical care services relevant to the claim. *Id.* at § 74.401(c).

Appellant contends Ham cannot qualify as an expert because he cannot meet the second and third qualifications set out in section 74.401(a). Appellant points out that although Ham is a board-certified anesthesiologist, there is no evidence showing he has knowledge of the standards of care applicable to a gastroenterologist or the standards of care for preparing for endoscopic ultrasound procedures. Appellant further contends that the report does not establish that the standard of care is the same for a gastroenterologist and an anesthesiologist.

Initially, we note Ham's report does not expressly state what specialty appellant practices. Ham states that surgeons and anesthesiologists share the same standard of care to ensure a patient's NPO status before surgery. Appellant contends he is a gastroenterologist while appellee generally refers to appellant as a surgeon.

We agree with appellant that Ham's qualifications as a board-certified anesthesiologist would not necessarily qualify him as an expert witness on the standard of care for a gastroenterologist or a surgeon. *See Broders v. Heise,* 924 S.W.2d 148, 153 (Tex.1996) (concluding emergency room physician, with no additional qualifications in neurosurgery, was not qualified to testify about whether patient's head injury was survivable if she had received timely treatment from a neurosurgeon). In this case, however, no question has been raised regarding appellant's performance of the endoscopic ultrasound procedure. Rather, appellee's complaint, and Ham's expert opinion, address whether appellant provided substandard care in preparing appellee for surgical anesthesia. Thus, without regard to whether appellant is a gastroenterologist or a surgeon, we conclude it is Ham's knowledge of accepted standards of medical care for patients preparing to undergo anesthesia that is relevant to appellee's claim. *See In re Boone,* 223 S.W.3d 398, 407 (Tex.App.-Amarillo 2006, no pet.) (where patient died after hernia surgery, cardiologist was qualified to render expert opinion on standard of care for general surgeon because report focused on postoperative coagulation care that fell within cardiologist's area of expertise rather than on hernia repair).

Ham's report and attached curriculum vitae show he is a board-certified anesthesiologist with a wide-ranging private practice in anesthesia. He formerly taught anesthesia at Baylor College of Medicine. Thus, the expert opinion Ham offers is in an area of medicine where his credentials and expertise are well-established. Under the facts presented, we cannot conclude the trial court abused its discretion in accepting Ham's qualifications to render an

opinion regarding the standard of care appellant was required to meet to prepare appellee for anesthesia. *See* § 74.401(a), (c).

■ Appellant next contends that Ham's report does not constitute a "good faith" effort to fairly summarize Ham's opinions because it does not separately discuss the standards of care and breaches applicable to him and to Johnson and requires him to speculate about what he is alleged to have done wrong. Identifying the correct standard of care is essential because the trial court cannot determine whether appellant breached his duty to appellee without specific information about what he should have done differently. *See Palacios,* 46 S.W.3d at 880; *Simonson v. Keppard,* 225 S.W.3d 868, 871 (Tex.App.-Dallas 2007, no pet.). Ham's report asserts the surgeon and anesthesiologist share responsibility to ensure the patient is "NPO" for at least six hours before surgery. Ham does not discuss how a surgeon carries out his portion of the shared responsibility. Ham does not state what appellant did or did not do to contribute to appellee's deficient "NPO" status.[1] In his brief, appellee suggests Ham's report shows appellant "actually wrote the NPO order less than two hours before the procedure began." In fact, however, Ham's report, as quoted above, states only that the "tube feeds were ordered to be stopped until further notice for an EGD by [appellant]." The report does not discuss which physician was responsible for issuing the NPO order nor does it identify who actually gave the order.

■ To satisfy section 74.351(r)(6)'s requirements, an expert report must specify what action or inaction of the defendant breached the standard of care. *See Jernigan v. Langley,* 195 S.W.3d 91, 93 (Tex. 2006) (per curiam) (discussing predecessor statute). In this case, Ham reports why the tube feeding was stopped but does not state who ordered the tube feeding discontinued. Although Ham's report indicates appellee's hospital treatment began on May 22, 2004, he does not state whether appellant was even involved in appellee's care six hours before the procedure was performed. Thus, even if we assume appellant must follow a surgeon's standard of care, within the four corners of the report, Ham's conclusion that appellant violated a surgeon's duty of care toward appellee is totally unsupported by any facts. In contrast, Ham reported in detail how Johnson violated the standard of care.

■ Unsupported conclusions regarding violations of the standard of care do not constitute a good faith effort to provide a summary of the expert's opinion. *See id.* at 94; *Eichelberger v. St. Paul Med. Ctr.,* 99 S.W.3d 636, 639 (Tex.App.-Dallas 2003, pet. denied). Ham's report does not inform appellant of the specific conduct the plaintiff has called into question nor does it provide a basis for the trial court to conclude that the claims have merit. *See Palacios,* 46 S.W.3d at 879; *see also Longino v. Crosswhite ex rel. Crosswhite,* 183 S.W.3d 913, 917 (Tex.App.-Texarkana 2006, no pet.) (concluding trial court abused its discretion in failing to dismiss claim after plaintiff filed expert report that contained no specific information regarding how defendant breached standard of care apart from allegations of second physician's negligence). Thus, we agree with appellant that Ham's report does not meet the statutory requirement that it show how appellant breached the standard of care. *See* § 74.351(r)(6); *Jernigan,* 195

---

1. Ham does not define "NPO" status. The parties agree that "NPO" means the patient is to receive nothing by mouth.

S.W.3d at 94 (concluding expert report was not specific enough to inform defendant/appellant physician of alleged errors where report asserted single standard of care applicable to all defendants and nothing in report expressly stated how defendant/appellant violated the standard of care).

■ Finally, appellant contends Ham's report does not provide the necessary causal relationship between appellant's acts or omissions and appellee's injury. Appellant criticizes Ham's report as conclusory regarding causation because it alleges only one breach of the standard of care, does not distinguish appellant's conduct from Johnson's conduct, and states that appellee's harm "may" have been avoided if appellee had not aspirated.

No "magical words" are required to establish the necessary causal link. *See Bowie,* 79 S.W.3d at 53. Thus, we agree with appellee that Ham's use of the word "may" in his report does not diminish the fact that he expressly ties appellee's aspiration to the injury alleged. We agree, however, with appellant's other contentions.

As we have already discussed, Ham's report is conclusory and does not sufficiently identify what, if anything, appellant did to violate the standard of care. Although Ham faults appellant for not having appellee NPO for six hours, Ham does not expressly state that deficient NPO status causes aspiration, and he describes procedures Johnson should have taken to eliminate the risk of aspiration. Although Ham concludes that appellee would not have aspirated if appellant and Johnson had conformed to the standard of care, he does not explain how appellant failed or why, in light of Johnson's failures to administer general anesthesia or titrate the intravenous anesthesia, appellant caused appellee's injury. Accordingly, we agree with appellant that Ham's report does not

establish a causal link between the alleged departure from the standard of care and appellee's injury. *See* § 74.351(r)(6); *see also Taylor v. Christus Spohn Health Sys. Corp.,* 169 S.W.3d 241, 245–46 (Tex.App.-Corpus Christi 2004, no pet.) (concluding trial court did not abuse its discretion in rejecting report that named multiple entities as violating same standard of care without describing individually each defendant's breach of the standard of care or how the alleged breaches of the standard of care proximately caused the plaintiff's death).

Because Ham's report does not address sufficiently two of three requirements of section 74.351(r)(6), the report cannot constitute a good faith effort, and the trial court abused its discretion in denying appellant's motion to dismiss. *See Jernigan,* 195 S.W.3d at 94. We sustain appellant's sole issue on appeal. We reverse the trial court's order denying appellant's motion to dismiss.

■ Appellant requests that we remand the case to the trial court for entry of a judgment dismissing appellee's claims with prejudice. We observe, however, that appellee filed a timely expert report and, in conjunction with his response to the motion to dismiss, filed a motion requesting a thirty-day extension of time to cure any deficiencies in the report. *See* § 74.351(c) (granting trial court discretion to consider thirty-day extension of time to cure deficiencies in expert report). We conclude the proper course of action is to remand this case to the trial court to allow it the opportunity to consider appellee's extension request. *See Longino,* 183 S.W.3d at 918 n. 2. Accordingly, we reverse and remand this case for further proceedings consistent with this opinion.