**Opinion filed August 21, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00176-CV

_____

## PHARMACY HEALTHCARE SOLUTIONS, LTD. D/B/A ADVOCATE RX SOLUTIONS, Appellant
## V.
## ERNEST JASON PENA ET AL., Appellees

**On Appeal from the 244th District Court**
**Ector County, Texas**
**Trial Court Cause No. C-132,292**

## O P I N I O N

This is an interlocutory appeal in a suit involving a health care liability claim.[1]

Ernest Jason Pena and other family members sued Pharmacy Healthcare Solutions,

Ltd. d/b/a Advocate Rx Solutions (Pharmacy Healthcare) and others for the wrongful

---

[1]*See* TEX. CIV. PRAC. & REM. CODE ANN. ch. 74 (West 2011 & Supp. 2014).

death[2] of Dina Pena (Dina) and for injuries to her prematurely born son, Jadin Pena. Pharmacy Healthcare moved for dismissal of the case based upon its contention that Appellees' medical expert reports failed to outline (1) the standard of care owed by Pharmacy Healthcare and its pharmacist, (2) how either had breached that standard of care, and (3) how any such breach caused Dina's death and her son's injuries. The trial court ruled that the reports submitted by Gourang P. Patel, who has a doctorate in pharmacy, and James M. Wheeler, MD constituted objective good faith efforts to comply with Section 74.351 of the Civil Practice and Remedies Code.[3] Pharmacy Healthcare appeals the ruling of the trial court. We dismiss.

## I. *Background Facts*

### A. *Dina's Complaints and Hospitalization*

Appellees allege that Dina, who was in her twenty-fifth week of pregnancy, called the office of Dr. Pamela A. McQuillin, who was Dina's obstetrician, and complained of shortness of breath. Dina was told to go to the hospital, the Odessa Regional Medical Center (ORMC), which she did. Dina was admitted with shortness of breath and Dina was significantly tachycardic with a heart rate from 150 to 156. After several hours, a spiral CT scan was performed, and the imaging revealed a pulmonary embolism.

Dr. Joseph Bruner, a maternal fetal physician specialist, prescribed Lovenox, "STAT,"[4] to prevent blood clots[5] in Dina, but the hospital pharmacy at ORMC failed

---

[2]Appellees also sued under the survival statute. The Texas Survival Statute permits a decedent's heirs, legal representatives, and estates to bring actions for personal injuries the decedent suffered before his death, while the Texas Wrongful Death Act confers a cause of action upon the surviving spouse, children, and parents of a decedent for their damages resulting from the decedent's death. *See* CIV. PRAC. & REM. §§ 71.021, 71.004.

[3]Appellees submitted Dr. Patel's report, along with two reports from Dr. Wheeler, as their expert reports that are required under Chapter 74. *See* CIV. PRAC. & REM. § 74.351.

[4]The Latin word "*statim*" means "immediately." BLACK'S LAW DICTIONARY 1632 (10th ed. 2014).

[5]Dr. Wheeler opined that blood clots are a well-known and common complication in pregnancy.

to dispense the anticoagulant for almost two hours. Appellees allege that, when the prescription for Lovenox was received, both by telephone and facsimile, by the pharmacy at ORMC, the pharmacy was staffed by a Cardinal Health Pharmacy Services, LLC pharmacy technician, who was in turn supervised by a pharmacist employed by Pharmacy Healthcare. Dr. Bruner attempted to transfer Dina to Houston for treatment, but when a transfer could not be secured, an order was given by Dr. McQuillin, and Dr. Suresh Prasad to transfer Dina to the Cardiac Care Unit of ORMC, so she could receive thrombolytic therapy.

As Dr. Kodi prepared to give Dina the thrombolytic therapy, Dina suffered cardiopulmonary arrest in her room and died. Dina's unborn child was delivered prematurely through a perimortem cesarean birth. Dina's cause of death was from blood clots that had grown and then propagated to the pulmonary arteries in her lungs. The clots obstructed blood flow, which led to cardiopulmonary arrest and death and also the premature birth of her son.

*B. Medical Experts' Reports*

Three medical expert reports, two from Dr. Wheeler and another from Dr. Patel, were served on Pharmacy Healthcare and other defendants. Dr. Patel explained that the "standard of care for a hospital pharmacy requires medications ordered on a STAT basis to be dispensed within one hour" of receipt of the order and that the failure to do so was a breach of the standard. Dr. Wheeler explained that a "STAT" order means to administer a prescription *immediately* and that the failure to properly and timely treat Dina's pulmonary embolism with the anticoagulant caused the clots to enlarge and propagate and obstruct the pulmonary arteries, which cut off blood and resulted in Dina's cardiopulmonary arrest, her death, and the premature delivery of her son.

*C. Procedural History*

Pharmacy Healthcare objected to the reports and moved to dismiss the case because Appellees had not served medical expert reports that complied with Section 74.351. Appellees filed a response to Pharmacy Healthcare's motion. After a hearing, the trial court overruled the objections on standard of care and breach, but it sustained the causation objections and granted Appellees a thirty-day extension to amend their medical reports. This appeal followed. Pharmacy Healthcare has only appealed the ruling of the trial court on the standard of care and breach of care opinions given in the report. Thus, causation, as it pertains to the medical reports, is not an issue before this Court.

## II. *Issue Presented*

Pharmacy Healthcare argues in one issue that Dr. Patel's report failed to qualify as a minimally sufficient expert report under Section 74.351 because the report did not identify Pharmacy Healthcare as a breaching defendant, articulate the applicable standard of care for Pharmacy Healthcare, or describe the acts or omissions of Pharmacy Healthcare that violated the standard of care.

## III. *Standard of Review*

We review a trial court's decision on a motion to dismiss a health care liability claim for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). In reviewing the trial court's decision, we may not substitute our judgment for that of the trial court in reviewing factual matters or matters committed solely to the trial court's discretion. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992).

IV. *Analysis*

The Medical Liability Act[6] entitles a defendant to dismissal of a health care liability claim if, within 120 days of the date suit was filed, the defendant is not served with an expert report showing that the claim against that defendant has merit.[7] *Scoresby v. Santillan*, 346 S.W.3d 546, 549 (Tex. 2011).

A. *"Good Faith" Requirement for the Expert's Report*

When a defendant moves to dismiss and challenges the adequacy of the claimant's expert report, the trial court shall grant the motion to dismiss only if the court finds, after a hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report. CIV. PRAC. & REM. § 74.351(*l*); *Abilene Reg'l Med. Ctr. v. Allen*, 387 S.W.3d 914, 917–18 (Tex. App.—Eastland 2012, pet. denied). A "good faith effort" under Section 74.351(*l*) "simply means a report that does not contain a material deficiency." *Samlowski v. Wooten*, 332 S.W.3d 404, 409–10 (Tex. 2011). If the report fulfills its two purposes, it represents a good faith effort. *Palacios*, 46 S.W.3d at 879. The two purposes of the expert report are to inform the defendant of the specific conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit. *Leland v. Brandal*, 257 S.W.3d 204, 206–07 (Tex. 2008) (citing *Palacios*, 46 S.W.3d at 879). "In contrast, a report that omits an element or states the expert's opinions in conclusory form is not a good faith effort." *Samlowski,* 332 S.W.3d at 410 (citing *Palacios*, 46 S.W.3d at 879).

B. *Three Requirements for Experts' Reports*

A report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute. *Palacios*, 46 S.W.3d at 878. The reports, which may be from one or more medical experts, must

---

[6]*See* CIV. PRAC. & REM. ch. 74.

[7]*See id.* § 74.351(b).

outline the following: (1) the standard of care, (2) the manner in which the defendant's care failed to satisfy that standard, and (3) the causal relationship between the defendant's failure and the injury or damages claimed. CIV. PRAC. & REM. § 74.351(i), (r)(6); *Allen*, 387 S.W.3d at 917–18 (citing *Packard v. Guerra*, 252 S.W.3d 511, 526 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)); *Tex. Cypress Creek Hosp., L.P. v. Hickman*, 329 S.W.3d 209, 213 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *see also Martin v. Abilene Reg'l Med. Ctr.*, No. 11-04-00303-CV, 2006 WL 241509, at *4 (Tex. App.—Eastland Feb. 2, 2006, no pet.) (mem. op.).

Only a physician may give opinion testimony about the causal relationship between the claimed injury, harm, or damages and the alleged departure from the standard of care. *Hickman*, 329 S.W.3d at 213. To avoid dismissal, a plaintiff need not present evidence in the report as if it were actually litigating the merits. The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial. *Palacios*, 46 S.W.3d at 879. A "fair summary" may be something less than a full statement of the standard of care and how it was breached, but it must, at a minimum, "set out *what care was expected, but not given.*" *Palacios*, 46 S.W.3d at 880 (emphasis added); *see also Gelman v. Cuellar*, 268 S.W.3d 123, 129 (Tex. App.—Corpus Christi 2008, pet. denied).

A plaintiff's suit may not be dismissed if a report, though deficient, contains a statement of opinion by an individual with expertise indicating the claim asserted by the plaintiff against the defendant has merit. *Scoresby*, 346 S.W.3d at 549. An individual's lack of relevant qualifications and an opinion's inadequacies are deficiencies the plaintiff should be given an opportunity to cure if it is possible to do so. *Id.* This lenient standard avoids the expense and delay of multiple interlocutory

6

appeals and assures a claimant a fair opportunity to demonstrate his claim is not frivolous. *Id.*

*C. Dr. Patel's and Dr. Wheeler's Opinions*

Dr. Patel, in his report, and Dr. Wheeler, in his two reports, outlined what "STAT" means when one gives a prescription order for Lovenox "STAT." Dr. Patel opined that the pharmacy had to dispense the prescription *within one hour* of the *order being received*, while Dr. Wheeler opined that "STAT" means that the medication must be administered *immediately*. Dr. Patel noted that Dr. Bruner first prescribed Lovenox at 3:41 p.m., an order transmitted by telephone and facsimile, but that the medication was not initially administered until 5:20 p.m.

Dr. Patel stated in his report that, during that time, Jenna Jackson, a registered nurse, called the pharmacy at least five times and was advised that the pharmacy was working on the order. Dr. McQuillin also called the pharmacy to obtain the status of the medication. Still later, the charge nurse, Christy Norwood, called the pharmacy and was told by the pharmacist that the Lovenox was in the PYXIS on the labor and delivery unit. Norwood told Jackson that the Lovenox was in the PYXIS, and Jackson retrieved the medication from the PYXIS. Jackson initially administered Lovenox to Dina at 5:20 p.m. and again at 5:29 p.m.

Dr. Patel outlined that the hospital pharmacy had a duty to deliver Lovenox within one hour of receipt of the prescription order. Dr. Patel, a hospital-based pharmacist, opined that the "hospital pharmacy" breached the standard of care when Lovenox, an anticoagulant, was not dispensed within one hour of receipt of the order.[8]

---

[8]Dr. Patel and Dr. Wheeler both outlined in their report that Dina's autopsy diagnosed the cause of death to be massive pulmonary thromboembolization.

Dr. Wheeler stated that, in reasonable medical probability, if Dina had been treated with complete anticoagulation and thrombolytic therapy, Dina would have survived her massive pulmonary embolism and even delivered at term. He noted that a delay in anticoagulation allows the existing clot to continue growing until it actually kills the patient by blocking effective oxygenation and causing cardiopulmonary arrest.

### D. Pharmacy Healthcare's and Appellees' Arguments

Pharmacy Healthcare asserts that Dr. Patel's report did not outline the standard of care and the breach of that standard attributable to Cardinal Health or Pharmacy Healthcare. Pharmacy Healthcare asserts that Dr. Patel's report is not compliant because it did not delineate between acts or omissions of Cardinal Health's pharmacy staff and acts or omissions of Pharmacy Healthcare's pharmacist in the hospital pharmacy, but instead described the "pharmacy." Pharmacy Healthcare argues that Dr. Patel's report does not qualify as an "expert report" and cites numerous cases to support its argument: one representative example is *Mallat v. Reeves*, 238 S.W.3d 874, 880 (Tex. App.—Dallas 2007, no pet).

In *Mallat*, the court held that, because the document did not differentiate between a surgeon's actions and the anesthesiologist's actions, it did not constitute a good faith effort to comply with Section 74.351(r)(6). 238 S.W.3d at 880. If more than one defendant is sued by a plaintiff, the plaintiff's expert report must outline the standard of care for each defendant and explain the causal relationship between each defendant's individual acts and the injury. *See Doades v. Syed*, 94 S.W.3d 664, 671 (Tex. App.—San Antonio 2002, no pet.); *Rittmer v. Garza*, 65 S.W.3d 718, 722 (Tex. App.—Houston [14th Dist.] 2001, no pet.). However, if multiple defendants owe the *same duty* to the patient, then the plaintiff is not required to specifically state the same standard of care for each individual defendant. *See Rittger v. Danos*, 332 S.W.3d 550, 556–57 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Romero v.*

8

*Lieberman*, 232 S.W.3d 385, 391–92 (Tex. App.—Dallas 2007, no pet.); *In re Boone*, 223 S.W.3d 398, 405–06 (Tex. App.—Amarillo 2006, orig. proceeding).

Appellees assert that Dr. Patel, a hospital-based pharmacist, set out the standard of care for dispensing Lovenox with a "STAT" instruction (i.e. within one hour of receiving the order) and that "the pharmacy" breached that standard of care when it dispensed the prescription almost two hours after it received the "STAT" order. Appellees also argue that Dr. Patel's report is sufficient and need not address agency or vicarious liability theories. "When a party's alleged health care liability is purely vicarious, a report that adequately implicates the actions of that party's agents or employees is sufficient." *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671–72 (Tex. 2008).

In *The University of Texas Southwestern Medical Center v. Dale.*, the plaintiffs' expert indicated in the report that four UT Southwestern resident physicians were negligent, but it did not specifically name UT Southwestern; our sister court in Dallas held that the report complied with Chapter 74 because the plaintiffs had alleged that UT Southwestern was liable for the actions of its resident physicians. 188 S.W.3d 877, 878–79 (Tex. App.—Dallas 2006, no pet.). Dr. Patel described the standard of care and the breach of that care, and in naming the pharmacy, he implicated the pharmacist.

Pharmacy Healthcare does not cite to a case that indicates that there are differing standards of care for pharmacy technicians and pharmacists, and we have been unable to locate one. All of the cases cited by Pharmacy Healthcare, including *Mallat*, are distinguishable because they do not address someone working under supervision of a medical professional. Those cases are also distinguishable because Dr. Patel has opined that there is a single standard of care for a hospital pharmacy, which implicates Pharmacy Healthcare's pharmacist who was on duty at the time.

In this case, *Dale*, which we have previously explained, and *Boone* are more analogous. *Dale*, 188 S.W.3d at 878–79; *Boone*, 223 S.W.3d at 405–06. In *Boone*, a physician assistant was supervised by a physician, and both were held to have violated a single standard of care that dealt with when to discontinue anticoagulation medication following surgery. *Boone*, 223 S.W.3d at 405–06. Our sister court in Amarillo concluded that, "[w]hile relators may disagree with [the expert's] opinions concerning the standard of care applicable to each of those individual defendants, the report contains a fair summary of his opinions and adequately informs them of the specific conduct called into question." *Id.* at 406 (citing *Palacios*, 46 S.W.3d at 879–80). *Boone* is analogous because Appellees alleged that Pharmacy Healthcare's pharmacist was on duty at the time of the incident, and Dr. Patel outlined a single standard of care for the pharmacy—dispense Lovenox within one hour on a "STAT" order—which did not happen, and that opinion clearly implicated Pharmacy Healthcare and its pharmacist.

Two other cases, *Chandler v. Singh*, and C*VS Pharmacy, Inc. v. Ballard*, are helpful in the analysis of the medical report. *See Chandler v. Singh*, 129 S.W.3d 184, 187–89 (Tex. App.—Texarkana 2004, no pet.); C*VS Pharmacy, Inc. v. Ballard*, No. 01-12-00253-CV, 2012 WL 4742652, at *3–7 (Tex. App.—Houston [1st Dist.] Oct. 4, 2012, no pet.) (mem. op.). In *Chandler*, the court held that the medical expert report complied with Section 74.351; it outlined the standard of care, the breach of that care, and the damages that resulted from the actions of the pharmacist and his employer, Wal-Mart. 129 S.W.3d at 187. The expert report in *Chandler* outlined that the pharmacist failed to complete a drug regimen review and assess the patient's history before he filled a prescription for Ultram. *Id.* at 189–90. Similarly, Dr. Patel outlined a standard of care: issue prescriptions ordered on a "STAT" basis within one hour of receipt—*the expected care to be given. See Palacios*, 46 S.W.3d at 880; *Gelman*, 268 S.W.3d at 129. Dr. Patel also opined that the failure to do so—*the care*

10

*not given*—was a breach of that standard and that breach implicated Pharmacy Healthcare's pharmacist. *See Palacios*, 46 S.W.3d at 880; *Gelman*, 268 S.W.3d at 129. Likewise, in *CVS Pharmacy*, one medical expert's report was ruled sufficient where it covered duty, breach, and causation. 2012 WL 4742652, at *3–7. Although Dr. Patel's report is not as detailed as the report in *Ballard*, his report and Dr. Wheeler's reports, when read in conjunction, provide fair summaries of their opinions that meet the *Scoresby* requirements and are objective good faith efforts to comply with Section 74.351.

Pharmacy Healthcare also asserts that Dr. Patel's report is not a compliant report because it failed to name either Cardinal Health or Pharmacy Healthcare. A report does not fail to implicate a defendant's conduct solely because the defendant is not identified in the report by name. *Troeger v. Myklebust*, 274 S.W.3d 104, 110 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *Ogletree v. Matthews*, 262 S.W.3d 316, 321–22 (Tex. 2007)). Dr. Patel outlined that the hospital pharmacy failed to timely dispense Lovenox, which implicated Pharmacy Healthcare and its pharmacist; his report is a fair summary and is an objective good faith effort to comply with Section 74.351. We hold that the trial court did not abuse it discretion when it overruled Pharmacy Healthcare's objections and denied its motion to dismiss. We overrule Pharmacy Healthcare's sole issue on appeal.

## V. *Conclusion*

We have reviewed the record and hold that the trial court did not abuse its discretion when it found that the reports of Dr. Wheeler and Dr. Patel met the *Scoresby* standard and constituted a good faith effort to comply with Section 74.351. Because the reports meet the *Scoresby* standard and because this appeal was brought from an order in which the trial court not only denied a motion to dismiss but also granted a thirty-day extension, we dismiss the appeal for want of jurisdiction. *See Scoresby*, 346 S.W.3d at 557–58.

## VI. *This Court's Ruling*

We dismiss this appeal for want of jurisdiction.


MIKE WILLSON

JUSTICE


August 21, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.